IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DARRELL WAYNE BUMPAS, | )<br>) |
| Petitioner, | ) Case No. 3:11-cv-00471<br>) Chief Judge Haynes |
| v. | )<br>) |
| STATE OF TENNESSEE, | )<br>) |
| Respondent. | ) |

**MEMORANDUM**

Petitioner, Darrell Wayne Bumpas, a state prisoner, filed this action under 28 U.S.C. § 2254 seeking to set aside his state convictions based upon his plea agreement for robbery and resisting arrest for which Petitioner received an effective sentence of six (6) years with one year of probation. Petitioner's habeas claims are: (1) that his guilty pleas were involuntary and without the understanding of the charges against him or the consequences of the pleas; (2) that Petitioner's conviction that was based upon his coerced confession is invalid; (3) that Petitioner was denied effective assistance of counsel for his pleas; (4) that Petitioner was denied due process of law because he was sentenced in the wrong court; and (5) Petitioner was denied due process of law in the denials of mental health screening and his medications. (Docket Entry No. 1 at 6-7).

After a review of the petition, this Court ordered the Respondent to file the state court record and a response to the petition. Respondent filed its Answer and the State record. Respondent contends that most of Petitioner's claims were not presented to the state courts and are procedurally defaulted. Respondent also argues that Petitioner's exhausted claims were reasonably decided by the state courts that applied clearly established federal law.

1

## A. Procedural History

A grand jury indicted Petitioner for robbery, three counts of assault, tampering with evidence and evading arrest. Bumpas v. States, No. M2010-00222-CCA-R3-PC, 2010 WL 5140673 at *1 (Tenn. Ct. Crim. App. Dec. 14, 2010). These charges arose out of the Petitioner's striking a person, taking the person's cell telephone and evading arrest after the robbery. Id. Petitioner pled guilty and received a sentence of six (6) years for robbery and resisting arrest. Id.

On December 8, 2008, Petitioner filed his pro se state post-conviction petition for which the state trial court appointed counsel who filed an amended petition. Id. After an evidentiary hearing, the state trial court denied the petition and on appeal, the Tennessee Court of Criminal Appeals affirmed. Id. at *8. In his post-conviction appeal, Petitioner presented the following claims: (1) that trial court erred in denying relief on his claims of ineffective assistance of counsel; and (2) the trial court erred in denying his claim that his guilty pleas were unknowing or involuntarily. Id. at **5, 8. The Tennessee Supreme Court denied permission to appeal on April 14, 2011. Id. at * 1.

## A. Review of the State Record

In the post-conviction appeal, the State Court of Criminal Appeals set forth the facts[1] underlying Petitioner's guilty pleas.

> This case arises from the Defendant's striking the victim and taking the victim's cell phone on August 12, 2007. When police subsequently attempted to arrest the Defendant, he resisted arrest. For these actions, a grand jury indicted the Defendant for one count of robbery, three counts of assault, one count of tampering with evidence, one count of resisting arrest, and one count of evading

---

[1] State appellate court opinion findings can constitute factual findings in a habeas action. Sumner v. Mata, 449 U.S. 539, 546-47 (1981) and have a statutory presumption of correctness 28 U.S.C. § 2254(e).

arrest. The Defendant pled guilty to one count of robbery and one count of resisting arrest. At the hearing to enter his guilty plea, the State told the court that, had this case gone to trial, the evidence would have proven, in part:

> [O]n 12, August, 2007, this defendant ... identified by Joshua Branch as having struck him and t[aken] his cell phone. The further proof was really what the Court heard in the suppression hearing that an effort was made to arrest him and he resisted that arrest in the apartment. And the Court heard about the struggle as it was in ... the apartment room.
>
> The initial assault and taking that we submit would constitute the robbery occurred near ... 12th Avenue South, which is here in Davidson County.

The Defendant acknowledged that the facts were as the District Attorney said. The trial court explained the proposed guilty pleas and proposed sentence to the Petitioner, and the Petitioner said he understood his guilty pleas and sentence. The trial court explained all the counts the Petitioner faced and their potential sentences and fines. The Petitioner said that his attorney had previously explained the same to him. The Petitioner agreed that he was present at a recent suppression hearing where he heard the testimony of the police officers involved in his arrest. The Petitioner, who said he had completed the eleventh grade, testified that he and his attorney went over his guilty plea together.

The trial court asked the Petitioner whether he was on any medication at the time of the hearing, and the Petitioner said he was not. He said he was supposed to be taking Doxepin "for depression" but was not taking it at the time of the hearing. He testified that being without Doxepin did not affect his ability to understand what he was doing and that he understood that he was pleading guilty. The trial court then accepted the Petitioner's guilty plea to robbery and resisting arrest and sentenced him as a Range II offender to six years in the Tennessee Department of Correction. Seventeen days after the Petitioner entered his plea and was sentenced, he filed a motion to withdraw his guilty plea, and the trial court denied this motion after a hearing.

Id. at *1. The other facts found by the Tennessee appellate court will be set forth in the context of Petitioner's claims.

## B. Conclusions of Law

Petitioner's habeas petition is governed by the provisions of the Antiterrorism and Effective

3

Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under the AEDPA, federal courts may not grant habeas relief for claims adjudicated on their merits in a state court proceeding, unless that state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." The Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States" as referring to "holdings, as opposed to dicta" of its decisions "as of the time of the relevant state-court decision." Id. at 412.

In Greene v. Fisher, _U.S._, 132 S.Ct. 38, 43-45 (2011), the Supreme Court considered whether "'clearly established Federal law' includes decisions of this Court that are announced after the last adjudications of the merits in state court but before the defendant's conviction becomes final" and answered the question in the affirmative. There, a Supreme Court decision at issue was rendered two months after the state supreme court upheld the petitioner's convictions. The Supreme Court held that its decision was not clearly established at the time of the state supreme court's decision. Id. The Supreme Court noted a different result if the Petitioner had applied for the writ of certiorari

4

or had filed a state post-conviction petition. Id. at 45.

In Bell v. Cone, 535 U.S. 685, 693 (2002), the Supreme Court reiterated that the AEDPA modified a federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law." Under the "unreasonable application" clause, a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. The Supreme Court explained that a state court's application of clearly established federal law must be "objectively unreasonable," and a federal habeas court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court's application of federal law is unreasonable and habeas relief may be granted if the "state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)).

In reaching this decision, the Supreme Court reiterated that the claims were to be decided on the record before the state court:

> In this and related contexts we have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Yarborough v. Gentry, 540 U.S. 1, 6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam) 124 S.Ct., at 4 (denying relief where state court's application of federal law was "supported by the record"); Miller-El v. Cockrell, 537 U.S. 322, 348, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Holland v. Jackson, 542 U.S. 649, 652 (2004) (emphasis added). The district court also "must presume that all determinations of factual issues made by the state court are correct unless the Defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 738 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). This presumption includes credibility findings of the state courts. Skaggs v. Parker, 235 F.3d 261, 266 (6th Cir. 2001).

### 1. Invalid Guilty Plea Claim

As to Petitioner's involuntary guilty plea claims based upon his alleged lack of understanding of the charges and the consequences of his pleas, citing Boykin v. Alabama, 395 U.S. 238 (1968), the Tennessee courts found this claim meritless. The Tennessee appellate court found as follows:

> The Petitioner agreed that, on the day he pled guilty, he told the trial court that he was supposed to be taking Doxepin. He agreed the trial court asked him if the absence of this medication affected his ability to understand what he was doing, and he responded, "Not that I can think of, no." At the plea hearing, the trial court then asked him if he was having trouble understanding what he was doing, and the Petitioner responded, "No." The Petitioner said he did not recall saying this to the trial court, blaming the lack of medication for his memory loss. The Petitioner testified, "I guess I thought [at the time of the hearing] I understood what I was doing."
>
> The Petitioner agreed he was present at the motion to suppress where the officers testified about the facts against him. He said, however, the female victim who testified against him was a "drunk" who got mad when someone would not give her something she wanted, which was why she testified in the manner she did. He denied ever hitting her, saying he was not raised "that way."
>
> The Petitioner said, at the time of his plea, he was not able to make a clear decision because he was unable to think straight. He said he was unable to concentrate because of the lack of medication. Further, he was still suffering the injuries he received from his altercation with police. The Petitioner testified that this altercation caused him brain damage, resulted in his teeth being knocked out and his ear drum being "busted." The Petitioner stated he received no medical attention for these injuries.

* * *

> The Petitioner contends he is entitled to post-conviction relief because his guilty pleas were not knowingly and voluntarily entered. He argues that, because he was unable to take his depression medication, Doxepin, during the six months leading up to his plea submission hearing, he did not knowingly and voluntarily plead guilty. The State counters that, because the Petitioner did not present expert testimony about the effects of Doxepin, he failed to prove by clear and convincing evidence that his guilty plea was unknowingly and involuntarily entered. The State cites three cases to support its argument.
>
> We conclude that the Petitioner has not proven that his guilty plea was not knowingly and voluntarily entered. As the State pointed out in its brief, this Court has, on multiple occasions, held that a petitioner's bare allegations, unsupported by medical testimony, about the use of psychiatric drugs was insufficient to support a claim that his guilty plea was not knowingly and voluntarily entered. See Culberson, 2006 WL 2956504, at *4; Rayle, 2007 WL 1966021, at *4; Moreno, 2010 WL 2483473, at *6. In this case, the Petitioner's bare allegations that, due to being unmedicated, his guilty plea proceedings were a "blur" and that he suffered insomnia and anxiety do not constitute clear and convincing evidence that his guilty pleas were not constitutionally entered. The Petitioner presented no medical testimony about the uses of Doxepin and what affect not having this medication would have upon him. Under these circumstances, we simply cannot conclude that the Petitioner has met his burden of proof in this regard. He is not, therefore, entitled to relief on this issue.

Bumpas, 2010 WL 5140673, at ** 3, 8.

As quoted earlier, the Tennessee appellate court found that "[t]he trial court explained the proposed guilty pleas and proposed sentence to the Petitioner, and the Petitioner said he understood his guilty pleas and sentence. The trial court explained all the counts the Petitioner faced and their potential sentences and fines. The Petitioner said that his attorney had previously explained the same to him. The Petitioner agreed that he was present at a recent suppression hearing where he heard the testimony of the police officers involved in his arrest. The Petitioner, who said he had completed the eleventh grade, testified that he and his attorney went over his guilty plea together." Id. at *1.

A plea of guilty is valid if entered voluntarily, knowingly and intelligently, and its validity

7

is determined under the totality of the circumstances. Brady v. United States, 397 U.S. 742, 749, (1970); Boykin v. Alabama, 395 U.S. at 242-44. The Constitution requires that a defendant be informed of the direct consequences of his plea. Brady, 397 U.S. at 755. State trial courts are required to advise state defendants of these rights under the Due Process Clause of the Fourteenth Amendment to ensure a voluntary and knowing plea of guilty. Boykin, 395 U.S. at 242.

A defendant's solemn declaration of guilt carries a presumption of truthfulness. Blackledge v. Allison, 431 U.S. 63, 74 (1977); Henderson v. Morgan, 426 U.S. 637, 648 (1976). Moreover "a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973).

Here, Petitioner's counsel and the trial court reviewed with Petitioner the charges against him and the sentencing ranges. The facts for the plea are undisputed and Petitioner was competent to enter his guilty plea. This court concludes that Petitioner has not shown that the Tennessee Court of Criminal Appeals' decision on his guilty pleas is an unreasonable application of clearly established federal law.

### 2. Ineffective Assistance of Counsel Claims

For these claim, the Tennessee appellate court found the following facts:

The Petitioner, who had completed the incarcerative portion of his sentence and was

on probation at the time, filed a petition for post-conviction relief in which he alleged that his guilty pleas were not knowingly and voluntarily entered and that he received the ineffective assistance of counsel. A probation violation warrant was issued, and the Petitioner's probation was subsequently revoked. A hearing on the Petitioner's petition for post-conviction relief was then held, at which the following evidence was presented: The Petitioner testified that, after pleading guilty in this case, he was sentenced to six years, one year of which was to be served in prison and the remainder of the sentence to be served on probation. The Petitioner said his counsel for the plea ("Counsel") never explained the charges to him, explaining only the State's offer for a plea agreement. The Petitioner said that, during the time between his arrest and his plea, he never discussed with anyone his "medical condition." He explained that he went to "sick call" between sixty and seventy times and filled out paperwork each time but that the jail psychiatrist never sent him to the hospital or gave him the medicine he needed. The Petitioner said, before this, he had been taking "psychotropic drugs," namely Doxepin, for between fifteen and sixteen years. The doctor in the jail, however, refused to prescribe him this medication.

The Petitioner said he never told Counsel that he had a prescription for Doxepin, and Counsel never asked him if he took any medication. The Petitioner said he had not been taking his medication for six months when he entered his guilty plea. This, he said, affected his ability to answer questions in a timely fashion because his brain would "lock," making him unable to think properly. Further, the absence of the medication made him feel nauseous and suffer insomnia and anxiety. The Petitioner said, since being released, he goes to physical therapy twice a week and suffers from brain damage from the injuries "that occurred."

The Petitioner said he pled guilty only because he was in a "bad situation" in that he was not getting his medication and he was in chronic pain. Further, the Petitioner said, Counsel kept telling him he could receive a thirty-year prison sentence if he went to trial, which "scared" him. He testified that Counsel "scared" him into pleading guilty. The Petitioner said Counsel never discussed with him defenses or a trial strategy.

On cross-examination, the Petitioner testified that he never gave Counsel his version of the events that led to his arrest in this case. The Petitioner agreed that Counsel represented him during the preliminary hearing and that Counsel visited him in jail, but he maintained that the two only discussed the State's offer for a plea agreement and never discussed that he did not commit these offenses. The Petitioner agreed that he had a criminal record and that Counsel reviewed with him the State's motion for an enhanced sentence. About his record, however, he said many of the offenses occurred more than ten years ago. The Petitioner agreed that he understood that Counsel explained that his prior convictions could result in his sentence being enhanced.

* * *

The Petitioner's trial counsel testified he represented the Petitioner beginning the day of or the day before the Petitioner's preliminary hearing in this case. He met with the Petitioner before the preliminary hearing, and, during the hearing, he cross-examined the victim. After this, Counsel requested discovery from the State, and he was eventually satisfied with the State's response to his request. Counsel provided the Petitioner with a copy of the discovery as soon as he received it and met with him a number of times. After examining his log, Counsel testified that he had a total of nineteen contacts, including letter and telephone calls, with the Petitioner.

Counsel recalled that he also gave the Petitioner a copy of the transcript from the preliminary hearing, on which the Petitioner wrote questions the Petitioner wanted Counsel to ask the witnesses at trial. Counsel opined that the Petitioner was fully aware of the facts and factual issues surrounding the charges against him. Counsel explained that Counts 1 and 2 against the Petitioner, for robbery and assault respectively, related to the crime he committed against a citizen, and Counts 3 through 7 related to his interactions with the police. Counsel recalled that six police officer witnesses placed the Petitioner near the scene of the crime and that those officers were present during the Petitioner's subsequent encounters with the police. Counsel discussed with the Petitioner the charged offenses and the implications of being convicted of each charged offense.

Counsel testified that he had the State's notice to enhance the Petitioner's sentence and was also independently aware of the Petitioner's criminal history. The Petitioner expressed to Counsel questions about the accuracy of the State's notice, and Counsel attempted to verify the Petitioner's previous convictions.

Counsel said he filed a motion to suppress evidence against the Petitioner, and he discussed with the Petitioner the consequences of the trial court's ruling on that motion, namely that it only addressed the tampering with evidence charge the Petitioner faced and not the other six charges. Two of the police officers present at the time the Petitioner was taken into custody testified at the hearing on this motion, and Counsel cross-examined both of them.

Counsel testified that a number of discussions about settling the Petitioner's case occurred, and he described the Petitioner as "actively involved" in these discussions. He conveyed offers to the Petitioner via email, and the Petitioner denied these offers. Counsel recalled nine or ten different plea bargaining scenarios that he and the Petitioner and the State discussed. Counsel said that, once the parties reached a resolution in this case, he prepared the plea petition and reviewed it thoroughly with the Petitioner four days before the Petitioner entered his guilty plea. Counsel said he

10

himself signed the guilty plea petition on the day they reviewed it together, and the Petitioner signed it on the day he entered his guilty plea.

Counsel described the Petitioner as "very literate" and said he felt the Petitioner was "very well informed" about and "very involved" in his case. Counsel said he was not aware that the Petitioner needed medication, and he saw nothing in the Petitioner's behavior that indicated as much. During Counsel's initial interview with the Petitioner, the Petitioner denied having any mental health difficulties. Counsel said he never recalled the Petitioner saying that he needed any medication, and the first Counsel heard of this was the day of the guilty plea hearing. After the hearing, the Petitioner called Counsel and told him that he wanted to withdraw his guilty plea. Counsel sent a letter to the Petitioner explaining the procedures for withdrawing his plea and asking the Petitioner for facts to support this withdrawal. Because he did not receive a response from the Petitioner, Counsel filed a petition to withdraw the plea, which the trial court denied.

On cross-examination, Counsel testified that he sent to the Petitioner copies of the pattern jury instructions on both robbery and tampering with evidence. Counsel explained that he did not discuss any possible medications the Petitioner was taking or should have been taking because he had no reason to believe the Petitioner had mental health problems. The Petitioner told Counsel that, before being arrested, he worked as a landscaper. He did not disclose that he was on disability, which would have given Counsel a reason to inquire further into the Petitioner's mental health. Counsel recalled that the Petitioner asked him for numerous documents, including: colored copies of all of his mug shots from his previous arrests, his entire record, hospital records on all of the victims, copies of the criminal records of all of the witnesses, copies of all of the warrants, and everything included in the Petitioner's file kept by Counsel. Counsel agreed that this may be a sign that the Petitioner was suffering from agitation or anxiousness.

Bumpas, 2010 WL 5140673, at* 2-4.

Citing Strickland v. Washington, 466 U.S. 668 (1984) and Hill v. Lockhart, 474 U.S. 52 (1985). The Tennessee Court of Criminal Appeals rejected this claim and reasoned as follows:

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40–30–103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40–30–110(f) (2006). Upon our review, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the

11

evidence contained in the record preponderates against the judgment entered in the cause." Black v. State, 794 S.W.2d 752, 755 (Tenn.Crim.App.1990). Thus, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial court judge, not the appellate courts.

\* \* \*

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution.

\* \* \*

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To do so, he must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.; see Hicks v. State, 983 S.W.2d 240, 246 (Tenn.Crim.App.1998). In the context of ineffective assistance of counsel that resulted in a guilty plea, the petitioner is not required to present evidence that he likely would have fared better at trial than he fared by pleading guilty, although such evidence may also demonstrate that he would have insisted on his right to a jury trial. See Hill, 474 U.S. at 59. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. Strickland, 466 U.S. at 697; Goad v. State, 938 S.W.2d 363, 370 (Tenn.1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." Strickland, 466 U.S. at 697.

> In the case under submission, we conclude that the Petitioner has not proven by clear and convincing evidence that Counsel's performance was deficient or that his guilty plea was not knowingly and voluntarily entered. With regard to Counsel's performance, the postconviction court found that Counsel credibly testified that the Petitioner did not disclose to Counsel any mental health issues or his need for medication. Further, Counsel did not observe any behavior by the Petitioner that caused Counsel to doubt the Petitioner's ability to understand the implications of his guilty plea. To the contrary, he found the Petitioner to be involved and engaged in his own defense. Counsel first learned of the Petitioner's need for medication during the guilty plea hearing when the Petitioner disclosed to the trial court that he had been prescribed Doxepin. The trial court then made multiple inquiries, which satisfied the judge that the Petitioner understood the implications of pleading guilty despite being off his depression medication. We agree with the post-conviction court that Counsel's failure to request that the guilty plea proceeding be halted in order to have the Petitioner's mental health evaluated did not constitute deficient performance.

Bumpas, 2010 WL 5140673, at *5, 6, 7.

The statutory presumption of correctness extends to credibility determinations of the state courts. Skaggs, 235 F.3d at 266. There is not any basis to challenge those determinations. Given the state court's reliance on Strickland and Hill and Petitioner's failure to challenge the state court's factual findings with any proof, the Court concludes that Tennessee courts reasonably applied clearly established federal law and reached a reasonable determination based upon the facts in the state court.

### 3. Defaulted Claim

Petitioner's due process claim is that he was sentenced in the "wrong courthouse" because he should have been in "mental health court for those with mental disabilities." (Docket Entry No. 1 at 7). Petitioner also alleges denial of his medications and a proper mental health screening as required by Tennessee law. Id. Respondent contends that Claims 2, 4, 5 were never presented to the Tennessee state courts either on direct appeal or post-conviction. Respondent argues that state law now bars these claims that are also procedurally defaulted, precluding habeas review.

A habeas petitioner must exhaust state remedies and present his federal constitutional claims to the state courts prior to filing a federal habeas relief. 28 U.S.C. § 2254(b). Rose v. Lundy, 455 U.S. 509 (1982). This exhaustion requirement is to prevent "[f]ederal intrusions into state criminal trials," Engle v. Isaac, 456 U.S. 107, 128 (1982) and is "rigorously enforced." Rose, 455 U.S. at 518. The state courts must be "given a full and fair opportunity to rule on the claim" O'Sullivan v. Boerckel, 526 U.S. 838, 846-47 (1999). A federal habeas claim is "fairly present" where "the legal and factual substance of every claim to all levels of state court review." Pillette v. Foltz, 824 F.2d 494, 496 (6th Cir. 1987).

Petitioner did not raise these due process claims in his state post-conviction petition in the Davidson County Criminal Court nor his post-conviction appeal. Petitioner is now barred by the post-conviction statute of limitations and restrictions on successive state petitions from raising these claims with the state courts. Tenn. Code Ann. § 40-30-102(a), -102(c), and -117; see also Tenn. R. App. P. 36(a). Thus, these due process claims are procedurally defaulted.

Procedural Default Doctrine is an extension of the comity policy that underscores the exhaustion doctrine and bars consideration of a federal claim in a habeas action that was barred by application of a state rule absent a showing of cause and prejudice. Coleman v. Thompson, 501 U.S. 722, 750 (1992). The rationale for this doctrine arises out of federal respect for federalism and maintaining comity with state courts. Id. at 730-32. The Supreme Court further recognized that state procedural rules also serve a legitimate state interest in finality of criminal convictions. Francis v. Henderson, 425 U.S. 536, 542(1976). State procedural rules channel the controversy to the state trial and appellate courts and serve the State's interest in finality. Id. at 490-9. The procedural default doctrine applies only to firmly established and "regularly followed" state procedural rules. Johnson

v. Mississippi, 486 U.S. 578, 587 (1988). If the state court did not determine whether a petitioner's claims were procedurally defaulted under state law, then the District Court is to consider whether the state court would bar the claims, if those claims were presented to the state courts. Engle, 456 U.S. at 125-26, n.26.

Once procedural default on a state rule is established, the federal petitioner must establish cause and prejudice to excuse such non-compliance. Carrier, 477 U.S. at 488. The procedural default doctrine also does not preclude federal habeas review if the petitioner has an error-free trial, but makes a showing of actual innocence of the offense with clear and convincing evidence that reveals a fundamental miscarriage of justice. Sawyer v. Whitley, 505 U.S. 333, 336 (1992). If a petitioner's claims are procedurally barred, the habeas petitioner must show "cause for the noncompliance" and "actual prejudice resulting from the alleged constitutional violation." Wainwright v. Sykes, 433 U.S. 72, 84 (1977). Procedural default may also be excused "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496.

Petitioner has not made any showing of cause or prejudice to excuse these procedural defaults. Thus, the Court concludes that Petitioner's due process claims cannot be considered in this habeas action.

For these collective reasons, the Court concludes that the petition for the writ of habeas corpus should be denied.

An appropriate Order is filed herewith.

Entered this the 27 day of February, 2014.

William J. Haynes, Jr.
Chief United States District Judge